■ MORRIS LABAN, as Administrator of the Estate of JENNIE LABAN, Deceased, et al., Respondents-Appellants, v. JORGE CARDENAS, Respondent, and JACK SALOVSKY et al., Appellants-Respondents. FRANCES SALOVSKY et al., Appellants, v. JORGE CARDENAS, Respondent. MORRIS LABAN, as Administrator of the Estate of JENNIE LABAN, Deceased, et al., Respondents-Appellants, v. JACK SALOVSKY et al., Appellants-Respondents.—In consolidated actions to recover damages for personal injuries and wrongful death, (1) Jack and Frances Salovsky, as defendants, appeal from an interlocutory judgment of the Supreme Court, Kings County, dated December 18, 1972, against them and in favor of plaintiff Laban on the issue of liability on his causes for his personal injuries and for wrongful death of his wife, upon a jury verdict at a trial upon the issue of liability only; (2) the same appellants, as plaintiffs, appeal from so much of another interlocutory judgment of the same court, entered January 12, 1973, as is against them as plaintiffs and in favor of defendant Cardenas, upon the jury verdict at the same trial; and (3) plaintiff Laban appeals, as

limited by his brief, from the remainder of the latter interlocutory judgment, namely, the portions which are (a) in favor of defendants Salovsky and Cardenas and against him on his cause for conscious pain and suffering of his wife, upon the trial court's dismissal thereof, and (b) in favor of defendant Cardenas and against him, Laban, on his causes for his personal injuries and for wrongful death of his wife, upon the jury verdict at the same trial. Interlocutory judgments affirmed, with costs to plaintiff Laban against defendants Salovsky and with one bill of costs to defendant Cardenas jointly against plaintiff Laban and plaintiffs Salovsky. No opinion. Hopkins, Acting P. J., Cohalan, Brennan and Munder, JJ., concur; Martuscello, J., dissents and votes to (1) reverse the interlocutory judgment dated December 18, 1972; (2) modify the judgment entered January 12, 1973 by striking therefrom the second, third and fourth decretal paragraphs, which are in favor of defendant Cardenas (a) against plaintiff Laban on the latter's causes for his personal injuries and for wrongful death of his wife, (b) against plaintiffs Salovsky and (c) for costs and disbursements; (3) grant a new trial as between (a) plaintiff Laban and defendants Salovsky and Cardenas on his said causes for his personal injuries and for wrongful death of his wife and (b) plaintiffs Salovsky and defendant Cardenas on their (Salovskys') action against him; and (4) affirm the interlocutory judgment of January 12, 1973 as so modified, with the following memorandum: The automobile accident herein occurred on the afternoon of April 6, 1968 in the westbound portion of Broadway at its intersection with Edwards Boulevard in the City of Long Beach, in Nassau County. It involved a 1963 Chevrolet operated by Frances Salovsky and owned by her husband Jack Salovsky and a 1957 Pontiac owned and operated by one Jorge Cardenas. At the time of the collision, Mrs. Salovsky was driving westbound on Broadway on her way home to Brooklyn. Her sister, decedent Jennie Laban, and the latter's husband, Morris Laban, were passengers in the Chevrolet. As a result of the collision, Mrs. Laban died and Mr. Laban and Mrs. Salovsky sustained personal injuries. One of the key issues litigated at the trial was whether, just prior to the collision, Cardenas was proceeding north into the intersection from the "butt end" of Edwards Boulevard, i.e., the point where it began at the boardwalk running along the beachfront, as his counsel maintained in his opening to the jury, or whether he was proceeding east on Broadway in the opposite direction that Mrs. Salovsky was traveling and then made a left turn at the intersection in order to go north on Edwards Boulevard across the westbound lane of Broadway in which Mrs. Salovsky was proceeding. Traffic at the intersection was controlled by an overhanging traffic light and a "yield on turn" sign which was designed to warn a motorist traveling east or west on Broadway to yield the right of way on making a turn onto Edwards Boulevard to other traffic proceeding east or west on Broadway. Cardenas, a native of Colombia, South America, who did not understand English, did not appear at the trial to testify and no explanation for his failure to appear was offered other than a statement by his counsel that he could not be located in Colombia. However, a portion of an accident report he had given in Spanish to the Homicide Bureau of the Nassau County Police Department a week after the accident and its English translation were marked as an exhibit into evidence at the trial solely for the purpose of clarifying the direction of travel he was following just prior to the collision. In this accident report Cardenas stated: "Saturday, April 6th, approximately at 3:45, leaving the beach, going on Broadway, heading east, I made a left towards north on Edwards Boulevard, Long Beach. I was driving my car, a Pontiac, 1957, sedan four-doors, Registration RQ220. When I was heading east on Broadway, approximately at 20 or 25 miles an hour, I saw the

light that was green and made a left towards north. And at the moment that I crossed I was struck by another car." If indeed Cardenas was traveling east on Broadway and was facing the "yield on turn" sign before he started to make the left turn, the Salovsky vehicle would have had the right of way over him, assuming both cars approached the intersection at the same time. Mrs. Salovsky, who did testify at trial, maintained consistently throughout that, as she approached the overhanging traffic light governing westbound traffic at the intersection, it was green in her favor; that she continued to watch the light as she approached the intersection and that it was still green when she entered the intersection; that she looked left and right upon entering the intersection, while simultaneously observing the green traffic light; and that she observed the Cardenas car a split second before impact. Although Cardenas did not appear at the trial, his attorney called a witness, a teenage boy named Brian Accetta. Accetta never gave a statement to the Nassau County Police Department. He testified that on the afternoon of the accident he was walking from the beach north on Edwards Boulevard. He crossed Broadway and, when he was about 50 to 70 feet north of Broadway, he "heard very loud skid marks", turned around, and "saw a Chevrolet skidding to a stop coming, you know, from East Broadway, going west, and the Pontiac coming up Edwards and the Chevrolet hit the Pontiac and sent him flying across the intersection. Both cars came to rest." According to Accetta, the Pontiac "was coming from the butt end of Edwards Boulevard." On cross-examination he testified that only a second or two elapsed from the time he heard the skidding and turned around and the time of the impact between the two cars and that, when he first observed the Pontiac, it was in the intersection about 30 feet away from the circular grass plot in the center of Broadway and was traveling about 30 miles per hour. When he turned around, he testified, he also saw the Salovsky Chevrolet coming west on Broadway at a speed of about 20 miles per hours because "it was skidding" and "losing speed pretty fast" and that, when he first saw it, the front of the Chevrolet was only 15 or 20 feet from Edwards Boulevard. Accetta did not notice the color of the traffic light. Accetta's testimony clearly indicated that the first time he saw the Pontiac was when he turned around and observed its position in the middle of the intersection. Consequently, his conclusion that Cardenas' Pontiac was coming from the "butt end" of Edwards Boulevard was not supported by any evidence in the record. The trial court submitted the case to the jury against both Cardenas and the Salovskys under special interrogatories, in which the jury was asked to find what the color of the light was on Broadway as Mrs. Salovsky entered the intersection and whether she or Cardenas, or both of them, were guilty of actionable negligence in the operation of their respective vehicles. In its charge the trial court, after discussing some of the testimony and reading several appropriate sections of the Vehicle and Traffic Law (§ 1172, subd. [b]; §§ 1142, 1110, subd. [a]; § 1111), stated: "In view of Mrs. Salovsky's testimony that she did not know what the light was when the accident occurred * * * it becomes your function to determine what in fact was the color of the light for Mrs. Salovsky in the westbound traffic. Remember, of course, that she was proceeding from east to west trying to get home to Brooklyn. If the light had turned red against her, then she was under a duty to have stopped before entering the intersection." Salovsky's counsel unsuccessfully excepted to this part of the charge. Finally, during their delibertaions, the jury requested "clarification or testimony on direction from which Cardenas car was proceeding". The following colloquy then ensued: "THE COURT: * * * Do I gather, Mr. Foreman, that your jury wants to get all of the testimony, including that of Mrs. Salovsky, whatever

she remembers about the direction of the Cardenas car as well as perhaps the testimony of Mr. Brian Accetta? THE FOREMAN: Yes. THE COURT: You want both? THE FOREMAN: Yes. THE COURT: To the best of his ability, I will instruct and ask Mr. Alweis to give us that. If after Mr. Alweis, our court reporter, gets through you still have other questions in mind concerning testimony, now is the time to make such request." The testimony of Mrs. Salovsky and Accetta was then read to the jury. The trial court then asked the foreman of the jury if he wished to hear any other testimony. The foreman said, "No", and, in response to the court's query, expressed satisfaction with the reading of the testimony of Mrs. Salovsky and Accetta. The court then denied the Salovskys' counsel's request to have read to the jury the portion of Cardenas' accident report admitted in evidence, in which Cardenas had stated that he was proceeding east on Broadway and then made a left turn north onto Edwards Boulevard at the time of the accident. In its charge to the jury, the court had referred to Cardenas' statement, but had not explained its significance to them. The court merely had stated that Cardenas' statement "might constitute an admission against interest made by Cardenas in Spanish describing his line of travel." Thereafter, the jury, in answer to the interrogatories submitted to it by the court, specifically found that the traffic light at the intersection facing Mrs. Salovsky was red when the accident occurred; that Mrs. Salovsky was negligent in the operation of her car; that her negligence proximately caused the accident; and that Cardenas was not guilty of negligence in the operation of his vehicle. In my view, the trial court committed reversible error in the afore-noted portions of its charge and erred in failing to have Cardenas' accident report read to the jury. Mrs. Salovsky consistently testified that the traffic light at the intersection was green in her favor. There was nothing in the record to indicate that she did "not know" the color of the light, as the trial court charged the jury she had testified. The court's inaccurate summary of Mrs. Salovsky's testimony on this crucial phase of the case was clearly prejudicial (see *Lyons* v. *City of New York*, 29 A D 2d 923, 924, affd. 25 N Y 2d 996). Finally, regarding the jury's request for "clarification or testimony" relating to the direction from which the Cardenas car was proceeding, it is clear that Cardenas' accident report was very relevant on this point. Cardenas' admission therein — that he was proceeding east on Broadway, with the traffic light green in his favor, and that he then turned north on Edwards Boulevard — would have made subdivision (b) of section 1172 and also section 1142 of the Vehicle and Traffic Law relative to obeying "yield" signs particularly applicable to the issue of his negligence. It is not clear from the record whether or not the Cardenas statement, which was an exhibit in evidence, was before the jury during their deliberations. Even if Cardenas' statement was before them, the jury should have been instructed that it was an admission, and that, if they believed that it was made, and that its contents were true, it could be considered as evidence against Cardenas on the issue of his line of travel. "When members of a jury are confused and desire enlightenment on a closely contested issue, they should be instructed upon the subject matter upon which they inquire" (*Lee* v. *Mount Ivy Ind. Developers*, 31 A D 2d 958). By refusing to have read to the jury Cardenas' admission, or to even instruct the jury that Cardenas had made an admission to the police a week after the accident, and that this admission, if believed by the jury to have been made and to have been true, could be considered by the jury as relevant evidence against Cardenas on the key issue in the case, the trial court prejudiced the Salovskys' defense, which was that Cardenas had failed to obey the "yield" sign and

had driven his car into the Salovskys' Chevrolet (see *Ferrari* v. *Schwartz*, 41 A D 2d 783).